IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTEN DIVISION

| | | |
|---|---|---|
| DEJUAN BOOKER, | ) | CASE NO. 3:14-cv-01025 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| NEIL TURNER, | ) | |
| Warden, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Dejuan Booker ("Petitioner" or "Booker"), acting *pro se*, filed this habeas

corpus action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 1.  Booker challenges the

constitutionality of his conviction and sentence in *State v. Booker*, Case No. CR0200902310

(Lucas County).  Doc. 1.  Following a jury trial, Booker was found guilty of felony murder in

violation of R.C. 2903.02(B) and 2929.02, and the attached firearm specification in violation of

R.C. 2941.145.[1]  Doc. 12-1, pp. 7, 80-81.  The trial court sentenced Booker to a prison term of

15 years to life for the felony murder conviction in addition to a mandatory and consecutive term

of 3 years for the firearm specification, for a total of 18 years to life.  Doc. 12-1, pp. 8, 81.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule

72.2.  For the reasons set forth below, the undersigned recommends that the Court **DISMISS**

Booker's Petition (Doc. 1) because the Petition presents claims that are not cognizable in federal

habeas review and/or are procedurally defaulted.[2]

---

[1] Booker was found not guilty of Count 2 – carrying concealed weapons.  Doc. 12-1, p. 7.

[2] In his Reply to Respondent's Return of Writ, Booker suggests that there is a conflict of interest with respect to the
State Attorney General's office's representation of Respondent.  Doc. 14, p. 7.  Booker contends that the State

## I.    Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Sixth District Ohio Court of Appeals summarized the facts underlying Booker's conviction as follows:

> {¶ 2} On May 1, 2009, appellant shot and killed Armond Parker ("Parker") and shot Markees Turner ("Turner") following a marijuana sale which abruptly ended when Turner "pistol whipped" and robbed appellant at gunpoint.
>
> {¶ 3} On the evening of Parker's death, the record reflects that Parker, Turner, and Kevin Garrett ("Garrett") were at two separate apartments in the Elmdale Court Apartments. Parker and Garrett were at Garrett's sister's apartment drinking alcohol and Garrett additionally smoked marijuana. Turner was in an apartment rented by two females. He was also drinking alcohol and smoking marijuana. At some point in the evening, Turner, Parker, and Garrett encountered each other in a park connected to the Elmdale Court Apartments. The three eventually headed to a convenience store located on the corner of Elmdale and Airport Highway to purchase cigars, drinks, and cigarettes. At the time, Garrett possessed 14 grams of marijuana and a scale on his person. Furthermore, unbeknownst to Garrett and Parker, Turner was carrying a 9 millimeter Jennings handgun in his waistband under his shirt.
>
> {¶ 4} At approximately 11:30 p.m., appellant, in his mother's white Ford Aerostar van, stopped to get gas at the same convenience store that Garrett, Parker, and Turner were patronizing. Prior to entering the convenience store, Garrett approached appellant and indicated that he had marijuana for sale. Appellant indicated his interest in purchasing marijuana, and the two agreed to continue their discussion once Garrett made his purchases in the convenience store. From this point, appellant, Garrett, and Turner's testimony diverged.
>
> {¶ 5} While in the store, Garrett's testimony was that Turner informed Garrett of Turner's intention to rob appellant. Garrett requested that Turner not rob

---

Attorney General's office should be precluded from representing the Respondent unless the State Attorney General's office intends to also represent Booker because the Warden, Mr. Neil Turner, is a private person like Booker.  Doc. 14, p. 7.  Booker requests that the Court strike in its entirety the Respondent's Return of Writ due to this alleged conflict.  Doc. 14, p. 7.   Booker's claim that it is improper for the State of Ohio to represent Respondent is without merit.  Accordingly, Booker's request to strike Respondent's Return of Writ is **DENIED**.

appellant, and did not take Turner seriously. Turner's testimony was that this conversation never occurred.

{¶ 6} Upon exiting the store, Garrett, Parker, and Turner entered appellant's vehicle. Garrett sat in the passenger's seat next to appellant. Turner sat directly behind appellant, and Parker sat beside Turner. Garrett's testimony was that he intended to complete the drug transaction at the Elmdale Court Apartments, while Turner testified that he believed that appellant was just giving the three a ride back to the apartments. Appellant testified that it was his preference to complete the drug sale at the convenience store.

{¶ 7} On the way back, appellant missed the road leading to the apartments, so he completed a U-turn at the corner of Mercer and Williamsville streets. At that point, one of the occupants indicated that the three could be let out at that location. Appellant pulled his vehicle over, turned off the lights, but left his vehicle running. Garrett and appellant then began negotiations for the marijuana sale. Appellant testified that the marijuana did not meet his quality standards, and therefore he informed Garrett that he was no longer interested in purchasing the marijuana.

{¶ 8} Turner testified that at that point, he decided to rob appellant. Turner pointed a gun at appellant and ordered him to turn over his property. Appellant resisted turning over his property. Testimony reveals that Turner "pistol whipped" appellant on the side of his forehead around his eye. Appellant then held out his money, marijuana, and cell phone for Turner to take. Turner ordered appellant to unlock the doors.

{¶ 9} The testimony of the three further deviates at this point. Appellant's version is as follows. Appellant observed that Garrett had a large gun on his lap, and appellant tried to grab the gun, at which point a struggle ensued. After gaining control of the gun, appellant exited the vehicle from the driver's side door. Appellant claims that Garrett alerted the others that appellant took his gun, Garrett then fled the scene, while Parker ran toward the front of the van. Appellant shot Parker not knowing whether he was armed, and began returning fire he believed was coming from Turner at the rear side of the van. Appellant testified that he fired a total of three or four shots and that the same number of shots were fired at him.

{¶ 10} Garrett testified that he exited the vehicle after Turner robbed appellant. Garrett opened the cargo door and saw Parker and Turner exit appellant's van. Garrett then turned to head towards Airport Highway, and heard a gunshot. As he began running, Garrett saw Turner run behind the van with a gun in his hand and his arm extended. Garrett heard a second shot, and then saw Turner fall down. Garrett testified that he did not see Parker. Garrett managed to flee the scene, heading down Williamsville to a dead end. Garrett returned to the scene twice- once prior to the police arriving, and once after the police arrived. While speaking

to the police, Garrett indicated that his brother-in-law, Parker, went to a convenience store, but had not returned. Garrett then returned to the Elmdale Court Apartments, but was stopped by the police as he fit the description of the suspect as indicated by a witness. Eventually, Garrett told the police his version of the events that occurred, and pointed out appellant as the shooter from a photo lineup.

{¶ 11} Turner testified that upon exiting the vehicle, he intended to return to the Elmdale Court Apartments. As he cleared the rear of the van, he heard two gunshots, felt that he had been hit, so he drew his gun and fired toward the driver's side of the van. Turner was able to fire three shots before his gun jammed. While Turner did not see Garrett, he saw Parker on the ground with a shot in his head. After he was shot, Turner tried to walk to get help, but collapsed near Parker and lost consciousness.

{¶ 12} Appellant then fled the scene in his van, and went to visit a friend at the Weiler Homes in Toledo. Appellant threw the gun out of the van after turning onto Airport Highway because he was on probation in the federal court system and was prohibited from possessing firearms. Upon arriving at the Weiler Homes, appellant backed into a parking space and parked his vehicle, which had the back window shattered and mostly missing. Appellant then went with his friend to St. Charles Hospital where he received six to eight stiches to close the wound on his head caused by Turner. Appellant told the hospital that he had been hit by an ashtray to avoid disclosing that he was robbed while trying to purchase marijuana—also prohibited under appellant's probation. The next day, after learning that someone had been killed during the shootout, and seeing his picture on the news, appellant decided to flee to Columbus until his family had enough money to hire an attorney. While he was in Columbus, U.S. Marshals tracked down and arrested appellant. He was then returned to Toledo.

{¶ 13} Evidence found at the scene included a jammed 9mm Jennings handgun, which contained DNA from Turner, Parker, and an unknown third person. Furthermore, the projectile that was removed from Turner was determined to be .45 caliber, possibly fired from one of the following guns: a Ruger .45 caliber, a Llma .45, or an "Auto–Ordinance Thompson .45 submachine gun" [sic]. Blood collected from the driver's side door handle, the exterior of the van behind the driver's side door, and the steering wheel was consistent with appellant's DNA. Furthermore, a cell phone found at the scene contained DNA consistent with that of appellant.

{¶ 14} The deputy coroner testified that there was no gunpowder stippling on Parker's body, which indicated that the gun which killed Parker was fired from an indeterminate range. Testimony from the coroner also reveals that Parker died from a six and one-half inch graze-type gunshot wound to the head caused by a large caliber weapon. Furthermore, the entrance wound was on the right side of Parker's scalp, which indicates that the shooter would have been looking at the

side of Parker's head at the time of the shooting. Photographic evidence reveals that glass from the minivan window was found on Parker.

*State v. Booker*, 2013 WL 139588, *1-3 (Ohio App. Ct. Jan. 11, 2013); Doc. 12-1, pp. 81-86, ¶¶ 2-14.

## II.     Procedural Background

### A.     State conviction

On July 7, 2009, the Lucas County Grand Jury indicted Booker on one count of murder in violation of R.C. § 2923.02(B) and R.C. § 2929.02, an unclassified felony with a firearm specification and one count of carrying concealed weapons in violation of R.C. 2923.12(A)(2) and (F), a fourth degree felony.  Doc. 12-1, pp. 4-6, 86.  The case proceeded to a jury trial and, on March 26, 2010, the jury found Booker guilty of murder and the attached firearm specification and not guilty of carrying concealed weapons.  Doc. 12-1, pp. 7, 86.   The trial court conducted a sentencing hearing on April 22, 2010, and sentenced Booker to serve a term of 15 years to life on the murder conviction and an additional term of 3 years on the firearm specification for a total prison term of 18 years to life.  Doc. 12-1, pp. 8-9.

### B.     Direct appeal

On May 18, 2010, Booker, through counsel, filed a notice of appeal in the Sixth District Court of Appeals.  Doc. 12-1, pp. 10-13.   On August 4, 2011, the state court of appeals removed Booker's original appellate counsel and appointed new appellate counsel.  Doc. 12-1, pp. 228-229.  On October 14, 2011, Booker's newly appointed appellate counsel filed Booker's appellate brief (Doc. 12-1, pp. 14-47) raising the following three assignments of error:

1.  The trial court erred with its jury instructions where it mandated Mr. Booker's convictions for felony murder regardless of the any consideration of "serious provocation" in its deliberations regarding the underlying felonious assault allegation.

    2. The trial court erred in denying Mr. Booker's motion for acquittal where the state failed to present sufficient evidence to sustain a conviction (TT4 at 28-30; TT4 at 139-40).

    3. Mr. Booker's conviction for felony murder and the attendant firearm specification was against the manifest weight of the evidence.

Doc. 12-1, p. 17. The State filed its appellate brief (Doc. 12-1, pp. 48-66) and Booker filed a reply brief (Doc. 12-1, pp. 67-75).[3] On January 11, 2013, the Sixth District Court of Appeals issued its Decision and Judgement affirming the judgment of the Lucas County Court of Common Pleas. Doc. 12-1, pp. 80-100.

On February 25, 2013, Booker, acting *pro se*, filed a notice of appeal in the Supreme Court of Ohio from the state court of appeals' January 11, 2013, judgment (Doc. 12-1, pp. 101-103) and memorandum in support of jurisdiction (Doc. 12-1, pp. 104-147). In his memorandum in support of jurisdiction, Booker raised the following three propositions of law:

    1. The trail court erred with its jury instructions where it mandated Mr. Booker's convictions for felony murder regardless of the any consideration of "serious provocation" in its deliberations regarding the underlying felonious assault allegation.

    2. The trial court erred in denying Mr. Booker's motion for acquittal where the state failed to present sufficient evidence to sustain a conviction.

    3. Mr. Booker's conviction for felony murder and the attendant firearm specification was against the manifest weight of the evidence.

Doc. 12-1, p. 105. The State filed a waiver of memorandum in response. Doc. 12-1, p. 267. On May 8, 2013, the Supreme Court of Ohio declined to accept jurisdiction. Doc. 12-1, p. 148.

## C.    Applications to reopen pursuant to Ohio App. R. 26(B)

On April 11, 2013, while his direct appeal was pending, Booker, through counsel, filed an application to reopen his direct appeal in the Sixth District Court of Appeals pursuant to App.

---

[3] The State also filed citations to additional authorities. Doc. 12-1, pp. 76-77, 78-79.

R. 26(B). Doc. 12-1, pp. 149-184. In his application to reopen, Booker argued that direct

appeal counsel was constitutionally ineffective for not raising the following assignment of error:

> Trial counsel was constitutionally ineffective because counsel did not request a Castle Doctrine jury instruction under R.C. 2901.05(B)(1). Sixth and Fourteenth Amendments to the United States Constitution; Ohio Constitution, Article I, Sections 10 and 16. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Doc. 12-1, p. 153.

Also, on April 15, 2013, Booker, acting *pro se*, filed an application to reopen his direct

appeal pursuant to App. R. 26(B). Doc. 12-1, pp. 185-200. Booker argued that appellate counsel

was ineffective for not raising the following assignment of error in his direct appeal:

> Appellate counsel failed to appeal ineffective assistance of trial counsel, violating appellant's rights under Amed. V, VI and XIV of U.S. Const. and Art. I, Sect. 2, 5, 9, 10 and 16 of the Ohio Const.

Doc. 12-1, pp. 193-197. In support of the foregoing assignment of error, Booker argued that:

> A.  Appellate counsel was ineffective for not appealing the fact that trial counsel was ineffective for failing to request and provide the trial court with appropriate jury instructions on a lesser included offense, to include, but not limited to reckless homicide, involuntary manslaughter, or voluntary manslaughter.
>
> B.  Appellate counsel failed to appeal the issue of trial counsel's failure to call an expert forensic witness to testify on Booker's behalf regarding the evidence at the crime scene. This could also be considered failure to investigate matters critical to the case. *Vasquez v. Bradshaw*, 2007 U.S. Dist. LEXIS 73969. An expert witness could have provided an evaluation of the evidence to justify Booker's claims of self defense. Minimally, a forensic expert could have provided the jury with evidence supporting the lesser included offense instruction (Issue A, supra.).

Doc. 12-1, pp. 193-197.

On April 15, 2013, the State filed an opposition to Booker's application to reopen. Doc.

12-1, pp. 201-206. On April 16, 2013, the State filed a motion to dismiss Booker's *pro se*

application to reopen on the basis that Booker was represented by counsel who had already filed an application to reopen.  Doc. 12-1, pp. 207-209.

On May 1, 2013, the Sixth District Court of Appeals denied Booker's *pro se* application to reopen appeal because Booker was represented by counsel and the court therefore could not entertain motions filed *pro se* by an appellant.  Doc. 12-1, pp. 210-211.

On May 15, 2013, the Sixth District Court of Appeals denied Booker's application to reopen finding that Booker "failed to demonstrate a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal."  Doc. 12-1, pp. 212-218.   On June 28, 2013, Booker filed a notice of appeal with the Supreme Court of Ohio.  Doc. 12-1, p. 244.   The Supreme Court of Ohio declined jurisdiction.  Doc. 12-1, p. 244.

**D.      Motion for new trial**

In March 2011,[4] Booker, acting *pro se*, filed a motion for new trial.  Doc. 12-1, pp. 219-221.  On April 13, 2011, the State filed a memorandum in opposition to Defendant's motion for new trial.  Doc. 12-1, p. 222.  On June 21, 2011, the trial court denied Booker's motion for new trial.  Doc. 12-1, p. 223.

**E.      Federal habeas corpus**

On May 12, 2014, Booker, acting *pro se*, filed his federal habeas petition asserting three grounds for relief.  Doc. 1.  On October 6, 2014, Respondent filed his Return of Writ.  Doc. 12. On November 18, 2014, Booker filed a Reply to Respondent's response.  Doc. 14.

Each of Booker's grounds for relief is addressed below in Section III.B.

### III.     Law and Analysis

**A.      Standard of Review under AEDPA**

---

[4] The motion for new trial has two date stamps noted on the face of the motion – March 2, 2011, and March 18, 2011.  Doc. 12-1, p. 219.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.[5] *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

---

[5] The AEDPA statute of limitations for filing a petition for a writ of habeas corpus is one year and it begins to run on the date judgment became final. 28 U.S.C. § 2244(d)(1). The statute of limitations has not been raised as an issue in this case.

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

## B.     Grounds for relief

### 1.     Ground One  is not cognizable

**Ground One**: Self-defense. I was lured in, robbed, pistol whipped during a marijuana buy and in the process of the robbery I struggled and took a gun while at least one other of the 3 still had a gun that begin shooting while approaching me.

Doc. 1, pp. 5-6.

Respondent argues that Ground One is not cognizable because the issue of whether Booker acted in self-defense does not impact the determination of whether there was sufficient evidence to convict Booker of felony murder.  Doc. 12, pp. 11-12.

Sufficient evidence exists to support a conviction if, when "viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of a crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d

191, 205 (6th Cir. 2009)(citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979))(emphasis in original); *Brown v. Bradshaw*, 2006 WL 533405, *29 (N.D. Ohio Mar. 3, 2006).  Although a sufficiency of the evidence claim raises a constitutional issue, where a sufficiency of evidence claim is raised, federal habeas courts are limited to reviewing whether there was sufficient evidence to support the elements of the crime.  *See Richardson v. Lebanon*, 384 Fed. Appx. 479, 482 (6th Cir. 2010) ("the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused committed the requisite elements of the crime.") (quoting *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999); *Allen v. Redman*,  858 F.2d 1194, 1197 (6th Cir. 1988) (Federal habeas corpus review has been limited to the "*elements* of the crime as defined by the state.")(emphasis in original).

The state court of appeals rejected Booker's sufficiency of the evidence claim premised on his claim that there was evidence presented to establish a presumption of self-defense,[6] finding that Booker's argument did not challenge the sufficiency of the state's evidence to establish the elements of felony murder and therefore concluding that Booker's argument was not appropriate in the sufficiency of the evidence context.  Doc. 12-1, pp. 96-97, ¶ 43.  The state court's finding that Booker's self-defense sufficiency argument did not challenge whether the elements of felony murder had been established is an interpretation of state law binding on this federal habeas court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged

---

[6] Under R.C. § 2901.05(A), the burden of proving self-defense by a preponderance of the evidence rests with the defendant and allocating the burden of production and proof in this manner has been deemed constitutional. *Yarbrough v. Moore*, 2014 WL 3573617, * 16 (S.D. Ohio July 21, 2014), *report and recommendation adopted*, 2014 WL 5107597 (S.D. Ohio Oct. 10, 2014)) (relying on *Martin v. Ohio*, 480 U.S. 228 (1987)); *see also State v. Middleton*, 1993 WL 257420, *6 (Ohio App. July 6, 1993) (indicating that, "The effect of the court's holding in *Martin* is that the state need not disprove that a defendant was acting in self-defense in order to convict him for aggravated murder or murder and it does not violate due process to force a criminal defendant to prove an affirmative defense such as self-defense by a preponderance of the evidence.").

conviction, binds a federal court sitting in habeas.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).  Also, Booker has not demonstrated that a showing of self-defense would negate the elements of felony murder in Ohio.  *See e.g., Yarbrough v. Moore*, 2014 WL 3573617, * 16 (S.D. Ohio July 21, 2014), *report and recommendation adopted*, 2014 WL 5107597 (S.D. Ohio Oct. 10, 2014)) (accepting respondent's argument that "a self-defense claim is not cognizable in habeas corpus on an insufficiency of the evidence ground for relief because it is an affirmative defense and does not, even if fully proved, negate any of the elements of the offense of conviction").  Accordingly, Booker's claim that his conviction for felony murder was not supported by sufficient evidence because he proved by a preponderance of the evidence that he was acting in self-defense is not cognizable in federal habeas review.

Booker contends that, even if his sufficiency of the evidence claim is not cognizable, this Court should nevertheless consider his claim as a claim that his conviction is against the manifest weight of the evidence.  Doc. 14, pp. 8-12.  The state court of appeals considered Booker's self-defense argument under a manifest weight of the evidence standard.  Doc. 12-1, pp. 96-100, ¶¶ 43-51.  In doing so, the state court of appeals concluded that it could not "say the jury clearly lost its way in rejecting the appellant's self-defense argument."  Doc. 12-1, p. 99, ¶ 50.  Although the state court of appeals considered Booker's claim under a manifest weight of the evidence standard, "[a] 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding," *Brown v. Moore*, 2008 WL 4239160, *8 (S.D. Ohio 2008) (citing 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1998)).  Accordingly, to the extent that Booker

seeks federal habeas review in Ground One of the state court of appeals' manifest weight of the

evidence determination, such claim is also not cognizable in federal habeas review.

Based on the foregoing, the undersigned recommends that the Court **DISMISS** Ground

One as not cognizable in federal habeas review.[7]

### 2.    Ground Two

**Ground Two**: I was entitled to an lesser degree as to the charge of felonious
assault.  I was robbed and pistol whipped and had to receive 8 stitches.  I was
bleeding profusely out of my face while being approached and shot at.

Doc. 1, pp. 6-7.

In Ground Two, Booker contends that the trial court erred by not providing a jury

instruction for aggravated assault.  Doc. 1, pp. 6-7, Doc. 14, pp. 13-14.  Respondent argues that

Ground Two, which alleges an error with respect to the jury instructions, raises a matter of state

law and therefore is not cognizable in federal habeas review.  Doc. 12, pp. 12-13.

On plain error review (Doc. 12-1, pp. 87-92, ¶¶ 19-29),[8] the state court of appeals found

that the trial court had not erred in omitting an instruction on the offense of aggravated assault as

an inferior degree offense of felonious assault, stating:

{¶ 19} "The analysis whether a defendant is entitled to have the jury instructed on
an offense for which the defendant has not been indicted begins by first
determining whether the requested instruction falls within the statutory definition
of a lesser included offense or inferior degree offense." State v. Ledbetter, 2d
Dist. No. 93–CA–54, 1994 WL 558996, *3 (Oct. 14, 1994). The Ohio Supreme
Court has explained that, under Crim.R 31(C) and R.C. 2945.74, a jury may
consider lesser, unindicted offenses only if the evidence supports the lesser charge
and the lesser charge falls into one of three groups. State v. Deem, 40 Ohio St.3d
205, 208, 533 N.E.2d 294 (1988). A jury may consider lesser, unindicted crimes
that are (1) a lesser-included offense of the crime charged, (2) an inferior degree

---

[7] Alternatively, Respondent argues that Ground One is without merit.  Doc. 12, pp. 16-17, 26-32.  However, since
Ground One is not cognizable, it is not necessary to address Respondent's alternative argument.

[8] The state court of appeals  reviewed only Booker's claim regarding the trial court's failure to provide an
aggravated assault jury instruction for plain error because the state court of appeals concluded that no objection had
been made with respect to the trial court's omission of an aggravated assault jury instruction.  Doc. 12-1, pp. 87-88,
¶ 18.

of the crime charged, or (3) an attempt to commit the crime charged, if such an attempt is an offense at law. *Id.*

{¶ 20} Lesser-included offenses are said to be necessarily included within the higher charge because the greater offense can never be committed without the lesser offense being committed, as statutorily defined, and some element of the greater offense is not required to prove commission of the lesser offense. *Id.* at 209.In contrast, "[A]n offense is an 'inferior degree' of the indicted offense where its elements are *identical* to or contained within the indicted offense, except for one or more additional mitigating elements which will generally be presented in the defendant's case." *Id.*

### Aggravated Assault Instruction

{¶ 21} Based upon a plain error analysis, we conclude that the trial court did not err by omitting the instruction for aggravated assault.

{¶ 22} R.C. 2903.11, defines the offense of felonious assault as follows,

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another * * *;

{¶ 23} Aggravated assault, codified in R.C. 2903.12, provides:

(A) No person, *while under the influence of sudden passion or in a fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force* shall knowingly:

(1) Cause serious physical harm to another * * *. (Emphasis added.)

{¶ 24} The elements of felonious assault are identical to the elements of aggravated assault, except that aggravated assault has an additional mitigating element. *Deem,* 40 Ohio St.3d at paragraphs two and four of the syllabus, 533 N.E.2d 294. Thus, aggravated assault is an offense of an inferior degree to felonious assault. *Id.;* State v. Elmore, 111 Ohio St.3d 515, 857 N.E.2d 547, 2006–Ohio–6207, ¶ 80.

{¶ 25} In a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault, an instruction on aggravated assault, as an inferior degree of felonious assault, *must* be given. Deem, 40 Ohio St.3d at 211, 533 N.E.2d 294.However, we conclude that there was insufficient evidence that appellant acted under "sudden passion or fit of rage" and appellant was not entitled to an instruction on aggravated assault.

{¶ 26} "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." State v. Mabry, 5 Ohio App.3d 13, 449 N.E.2d 16 (8th Dist.1982), paragraph five of the syllabus.

{¶ 27} In State v. Shane, 63 Ohio St.3d 630, 635, 590 N .E.2d 272 (1992), the Supreme Court elaborated on what constitutes "reasonably sufficient" provocation in the context of voluntary manslaughter. First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Id. If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage." Id. at 634–635.

{¶ 28} As applied in this case, we find the evidence insufficient to establish that appellant was subjectively under the influence of sudden passion or in a sudden fit of rage to incite the use of deadly force. Appellant's testimony, corroborated for the most part by Turner and Garrett, asserts that Turner "pistol whipped" and robbed appellant prior to the shooting. Nevertheless, appellant admitted that he was not mad after being hit by Turner. Appellant testified that he was afraid at the time, and that his fear was due, in part, by his memory of the death of his sister during a robbery. Thus, the record contains no evidence that appellant's actions were influenced by sudden passion or fit of rage at the time he shot Parker and Turner. It is well established that fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage. See State v. Collins, 97 Ohio App.3d 438, 445–446, 646 N.E.2d 1142 (8th Dist.1994); State v. Cunningham, 2d Dist. No. 2759, 1991 WL 216410 (Oct. 17, 1991); State v. Williams, 8th Dist. No. 60819, 1992 WL 198114 (Aug. 13, 1992). Thus, even if the events leading up to the shootings could be viewed as sufficiently provocative under an objective standard in the instant case, there is no evidence that appellant subjectively acted under the influence of sudden passion or fit of rage brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite defendant into using deadly force. See Shane, 63 Ohio St.3d at 634, 590 N.E.2d 272.

{¶ 29} Accordingly, the trial court did not err by omitting an instruction on the offense of aggravated assault as an inferior degree offense of felonious assault.

State v. Booker, 2013 WL 139588, *4-6 (Ohio App. Ct. Jan. 11, 2013).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Except where a challenged jury instruction violates the Due Process Clause, alleged errors in jury instructions are considered matters of state law that are not cognizable in federal habeas review.  *Engle v. Issac*, 456 U.S. 107 (1982).[9]  "[A] 'mere error of state law' is not a denial of due process."  *Engle v. Issac*, 456 U.S. at 121, n. 21.  Generally, "errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings . . . unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."  *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981).  Since "it is not the function of a federal habeas court to correct errors in state law," a request for habeas relief based on a state court's failure to give a jury instruction based on its interpretation of its own laws is warranted only "under the most unusual circumstances."  *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990) (en banc); *see also Shelton v. Seabold*, 198 F.3d 247, *2 (6th Cir. 1999) ("[W]hen the evidence presented at trial does not support a particular jury instruction, based upon a state court's interpretation and application of state law, an alleged error predicated upon that particular jury instruction is not cognizable in federal habeas corpus review unless the failure amounted to a fundamental miscarriage of justice.") (citing *Bagby*, 894 F.2d at 795).

The state court of appeals' review of whether the trial court properly omitted a jury instruction on aggravated assault was conducted in accordance with Ohio law and the state court of appeals concluded that there was insufficient evidence to support such an instruction.  The state court's determination on a matter of state law is not for this Court's review and, since the

---

[9] The claims raised in *Engle* related to  changes that had been made to Ohio's statute regarding affirmative defenses, R.C. § 2901.05(A).  *Engle*, 456 U.S. at 110-112.  As noted in *Engle*, the version of the statute at issue in *Engle* was amended in November 1978.  *Id.* at 112, n. 4.  The 1978 amendments had no effect on the litigation before the Court.  *Id.*

state court concluded that there was insufficient evidence to support an aggravated assault

instruction, the failure to provide such an instruction cannot be said to have denied Booker a fair

trial and due process nor can it be said that there was a fundamental miscarriage of justice likely

to have resulted in the conviction of an innocent person.  *See Bagby*, 894 F.2d at 795.

Moreover, the Sixth Circuit has held that "the failure to instruct on lesser included offenses in

noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of

justice or an omission inconsistent with the rudimentary demands of fair procedure."  *Bagby*, 894

F.2d at 797.  Accordingly, Booker's claim that the state court erred in not providing a jury

instruction on aggravated assault is not cognizable in federal habeas review.

Based on the foregoing, the undersigned recommends that the Court **DISMISS** Ground

Two as not cognizable in federal habeas review.[10]

### 3.      Ground Three

**Ground Three**: Castle Doctrine.  I was approached under false pretense allowed 3
perpetraters in my vehicle and was robbed and pistol whipped and defended my life.

Doc. 1, pp. 8-9.

In Ground Three, Booker claims that he was entitled to an instruction under the Castle

Doctrine.  Doc. 1, pp. 8-9, Doc. 14, pp.  4, 5-6, 13-14.   Respondent argues that Ground Three

presents an issue of state law and is not cognizable in federal habeas review and/or is

procedurally defaulted.  Doc. 12, pp. 12-13, 17-18.

"Ohio's Castle Doctrine creates a rebuttable presumption that a defendant acted in self

defense where 'the person against whom the defensive force is used is in the process of

unlawfully and without privilege to do so, entering, or had unlawfully without privilege to do so,

---

[10] Alternatively, Respondent argues that Ground Two is procedurally defaulted due to the lack of objection at trial to
the omission of a jury instruction on aggravated assault and/or that Ground Two is without merit.  Doc. 12, pp. 20-
26.  However, since Ground Two is not cognizable, it is not necessary to address Respondent's alternative
arguments.

entered the residence or vehicle occupied by the person using defensive force." *Lampley v. Bunting*, 2013 WL 5670947, *15 (N.D. Ohio Oct. 15, 2013) (quoting Ohio Revised Code § 2901.05(B)(1)).   Additionally, in certain circumstances, "the doctrine obviates the duty to retreat that is required by the common law doctrine of self defense."  *Id.* (quoting Ohio Revised Code § 2901.09(B), which provides that "a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.").

"The due process clause of the Fourteenth Amendment affords criminal defendants 'a meaningful opportunity to present a complete defense' and 'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for  a reasonable jury to find in his favor.'"  *See Horton v. Warden, Trumbull Correctional Inst.*, 498 Fed. Appx. 515, 522 (6th Cir. 2012) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984) and *Mathews v. United States*, 485 U.S. 58, 63 (1988)).   Thus, where a defendant has requested a self-defense instruction and the trial court has refused to provide the requested instruction, a defendant may raise a federal constitutional question arising from the state court proceedings.[11] *Id.* at 520-521 (finding that the petitioner had raised a federal claim but concluding that the state court's  adjudication did not involve an unreasonable application of clearly established federal law).  However, "[a] trial judge's failure to give a jury instruction that the defendant did not request is not an error cognizable through a federal habeas proceeding." *Florence v. Voorhies*, 2010 WL 1882312, at *16 (S.D. Ohio Mar. 29, 2010) *report and recommendation adopted,* 2010

---

[11] In *Horton*, the Sixth Circuit recognized that there is "no Supreme Court decision unmistakably setting down" a rule that "a criminal defendant has a due process right to a jury instruction on self-defense" but noted that "Supreme Court precedents include not only bright-line rules but also the legal principles and standards flowing from precedent." *Horton*, 498 Fed. Appx. at 522-523.

WL 1882132 (S.D. Ohio May 11, 2010) (citing *Miller v. Grant*, 19 F.3d 1433 [table], 1994 WL 102977 (6th Cir.1994) (citing *Manning v. Rose*, 507 F.2d 889, 895 (6th Cir.1974)).

As evidenced by Booker's App. R. 26(B) claim that his appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel for failure to request a Castle Doctrine jury instruction (Doc. 12-1, pp. 153-156), Booker did not request a Castle Doctrine jury instruction at trial.  Nor has Booker shown that the trial court's failure to provide the Castle Doctrine jury instruction amounted to a fundamental miscarriage of justice likely to have resulted in the conviction of an innocent person.   Thus, Booker's claim in Ground Three is not cognizable in federal habeas review.  *See Florence*, 2010 WL 1882312, at *16; *Bagby*, 894 F.3d at 795.

Even if Ground Three is cognizable, Ground Three should also be dismissed due to procedural default.  A petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Procedural default may occur in two ways.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."[12] *Id.*   Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"

---

[12] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.

*Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

Here, because Booker failed to present his claim of trial court error for failing to instruct the jury as to the Castle Doctrine to the state courts, his claim is procedurally defaulted.  While Booker filed an application to reopen his appeal pursuant to App. R. 26(B) alleging ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel for failing to request a Castle Doctrine jury instruction, that application preserved Booker's ineffective assistance of *appellate* counsel claims but not the underlying ineffective assistance of trial counsel claim or the underlying jury instruction claim.  *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[A] Rule 26(B) application 'based on ineffective assistance cannot function to preserve' the underlying substantive claim" for federal habeas review.) (citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *see also, Glenn v. Bobby*, 2013 WL 3421888, * 10 (N.D. Ohio July 8, 2013) ("When an appellant claims that appellate counsel was ineffective because he failed to raise certain claims, that does not fairly present the underlying substantive claims that appellate counsel failed to raise to the state courts.").

To overcome the procedural bar, Booker must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.  "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Id.*

Considering Booker's *pro se* pleadings liberally,[13] it appears that Booker is asserting that his appellate counsel's alleged ineffectiveness as argued in his App. R. 26(B) application should serve as cause to excuse the procedural default of his Castle Doctrine claim.[14]  Doc. 14, pp. 13-14.  A claim of ineffective assistance of counsel, if not procedurally defaulted itself, in certain circumstances may serve as cause to excuse the procedural default of the underlying substantive claim(s). *Edwards v. Carpenter*, 529 U.S. 446, 451-454 (2000).   Through the filing of his App. R. 26(B) application, Booker preserved a claim of ineffective assistance of appellate counsel with respect to the underlying claim that his trial counsel was ineffective in not requesting a Castle Doctrine jury instruction (Doc. 12-1, pp. 149-184) but did not argue that appellate counsel was ineffective for failing to raise as error the trial court's failure to *sua sponte* provide a Castle

---

[13] Allegations in *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

[14] A petitioner may also attempt to overcome a procedural default through a showing of a fundamental miscarriage of justice, i.e., that he is actually innocent. *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  A claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the proposition that "actual innocence means factual innocence, not mere legal insufficiency") (internal quotations omitted).  Booker has not satisfied this standard.

Doctrine jury instruction, which is the underlying claim that Booker appears to be raising in Ground Three.  Considering Booker's *pro se* status, the undersigned will nevertheless assess whether Booker's claim of ineffective assistance of appellate counsel is sufficient to serve as cause to excuse Booker's procedural default of Ground Three.

In order for ineffective assistance of counsel to serve as cause to excuse a procedural default, counsel's performance must be *constitutionally* ineffective.  *Edwards*, 529 U.S. at 451. Applying *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (Doc. 12-1, pp. 216-217), the state court of appeals considered Booker's claim but found his claim without merit stating in part:

> Therefore, it is clear that the statutory presumption of self-defense under R.C. 2901.05(B) does not apply in this case.  Consequently, we conclude that appellant has failed to demonstrate a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal.

Doc. 12-1, p. 218.

While the state court of appeals considered the merits of Booker's ineffective assistance of appellate counsel claim, when a claim of ineffective assistance of counsel is raised to demonstrate cause for procedural default rather than as a "free-standing" claim of ineffective assistance of counsel, the deference afforded a state court's adjudication of that claim under 28 U.S.C. § 2254(d) does not apply.  *Allen v. Harry*, 497 Fed. Appx. 473, *481 (6th Cir. 2012), *cert. denied*, 133 S.Ct. 1596 (2013) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel . . . because the latter must meet the higher AEDPA standing of review, while the former need not.") (internal citations and quotations omitted);  *see also  Dixon v. Hudson*, 2008 WL 540905, * 5 (N.D. Ohio Feb. 25,

2008).  The federal district court conducts "an independent assessment . . . to ascertain whether the alleged ineffectiveness was sufficient to constitute 'cause' to excuse procedural default."  *Id.*

The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1984).  *Strickland v. Washington*, 466 U.S. 668 (1984), establishes the standard for assessing claims of ineffective assistance of counsel, including those relating to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding that *Strickland* provided the proper standard for addressing whether appellate counsel was ineffective for failing to file a merits brief); *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Under the *Strickland* standard, to establish that his attorney was constitutionally ineffective, Murphy must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  Appellate counsel is not obligated to advance every possible argument on appeal.  *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983); *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004).

In light of evidence presented at trial, Booker is unable to demonstrate that the statutory presumption of self-defense under R.C. 2901.05(B) applied in his case.  R.C. 2901.05(B) provides that "a defendant is presumed to have acted in self-defense where 'the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered the residence or vehicle occupied by the person using the defensive force.'"  Doc. 12-1, p. 217.  Booker acknowledges that he initially allowed the victim into his vehicle but contends that that "invitation" was lost when the victim pulled a gun on him.  Doc. 14, p. 6.  However, since Booker allowed the victim

into his vehicle, it cannot be said the victims had unlawfully entered the vehicle as set forth in R.C. 2901.05(B).  Further, "[a]fter gaining control of the gun, [Booker] exited the vehicle from the driver's side door."  Doc. 12-1, p. 83, ¶ 9.  Then, *after exiting the vehicle*, Booker fired shots at Turner and Parker who had exited the vehicle.  Doc. 12-1, pp. 83-84, ¶¶ 9-11.  Thus, since the altercation occurred *outside* the vehicle, the statutory presumption was not applicable.[15] See *State v. Clark*, 2011 WL 6153087, *4 (Ohio App. Ct. Dec. 9, 2011); *see also Lampley*, 2013 WL 5670947, *15.

Since the evidence did not support a jury instruction under R.C. 2901.05(B), Booker is unable to demonstrate that appellate counsel was constitutionally ineffective for not assigning as error ineffective assistance of trial counsel for failing to request a Castle Doctrine jury instruction under R.C. 2901.05(B).  Accordingly, Booker's claim of ineffective assistance of appellate counsel may not serve as cause to excuse his procedural default of his claim that he was entitled to a jury instruction regarding the statutory presumption of self-defense under R.C. 2901.05(B).

Based on the foregoing, the undersigned recommends that the Court **DISMISS** Ground Three as not cognizable in federal habeas review and/or as procedurally defaulted.[16]

---

[15] In response to the Respondent's arguments that the evidence did not support a jury instruction under R.C. 2901.05(B), Booker presents arguments under R.C. 2901.09(B), which relates to there being "no duty to retreat" in certain circumstances.  Doc. 14, p. 6.  However, the argument raised in Booker's App. R. 26(B) application pertained to R.C. 2901.05(B), not R.C. 2901.09(B).  Doc. 12-1, pp. 153-156.  Thus, any such arguments were not preserved as part of his App. R. 26(B) application.

[16] Respondent argues in the alternative that Ground Three is without merit.  Doc. 12, pp. 32-33.  However, since Ground Three is not cognizable and/or procedurally defaulted, it is not necessary to address Respondent's alternative argument.

## IV.   Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS**

Booker's Petition (Doc. 1) because the Petition presents claims that are not cognizable in federal

habeas review and/or are procedurally defaulted.


Dated: November 30, 2015

_____
Kathleen B. Burke
United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).